Good morning, Your Honors. May it please the Court. Tanner Lash on behalf of Appellant Yen-Tau Yu, and I'd like to reserve five minutes for rebuttal. I will watch my clock. This appeal asks a simple question, whether a state law contract formation dispute can be turned into a federal case under the New York Convention. Counsel, I would appreciate your addressing right away the question that we posed. As I understand the record, your client, quote, independently agreed to arbitrate his claims and submitted a demand for arbitration, which is repeated, for arbitration on December 5, 2024. So what is the status of that arbitration now, and what claims were submitted to arbitration? Your Honor, the arbitration is ongoing. The claims that were submitted to arbitration were Mr. Yu's underlying employment claims, which are largely reflected in his amended state court complaint that's in the record at ER 66. And that's the — those are the claims about which this litigation focused, because the question was whether your client signed the arbitration agreement, and if he did not, whether the claims were arbitrable. And so tell me what you'd have us order in this case. Maybe we agree with your position that the Court lacked jurisdiction. Maybe we don't. This is a nice academic exercise. We can all write opinions or memos to each other about it. What relief do you get? We ask that the Court vacate the district court's order. And if the Court vacates the district court's order, aren't you in precisely the same position that you have voluntarily placed yourself in? We are not, Your Honor. Tell me why. To address the issue of mootness. An appeal is moot only if it's impossible. No, no. Just don't read the case law to me.  Answer my question. Tell me what change in position either side will undergo if we declare this case moot, or if we don't declare this case moot and reach your jurisdictional argument. How will either side be indifferently situated than they are today? ByteDance is currently pursuing a malicious prosecution counterclaim against Mr. Yu, seeking $6 million in tort damages, arguing that the district court's order reflects a favorable... In state court. In arbitration. Yeah, in arbitration. And he can pursue it. He may win, he may lose. My question is, you don't get out of arbitration no matter what we do, correct? We do not get out of arbitration. Okay. And in arbitration, all your underlying claims against ByteDance are being addressed, correct? Yes, Your Honor. So tell me again. Tell me again, as a practical matter, if we rule in your favor, how is Mr. Yu any better off than he is today? I want to ask the same question to the other side because I have no idea what their position is on mootness. But it just seems to me you're asking for an advisory opinion. Your Honor, ByteDance would not be able to pursue a malicious prosecution counterclaim against my client, seeking... ...the district court order. So you don't actually care whether or not we find this case to be moot because your client has voluntarily initiated arbitration. The case could be moot as long as what you're really asking for is Munsingwer, vacatur, of the district court decision. Is that correct? Yes, to prevent the collateral legal consequences. And if we were to find mootness, we would vacate the decision below, would we not? We certainly would invite the court to vacate the order. Okay, so if your own conduct, if your client's own conduct was the cause of the mootness, don't we have cases that say vacatur is not appropriate? It is an extreme remedy to award to a party who took the conduct in the first instance to create the mootness. That case law does exist, Your Honor. And to be clear, we're not asking the court to vacate because this is moot. We're asking the court to vacate for lack of subject matter jurisdiction. And this case is not moot. I'm asking you to assume for a moment that we think this appeal or this case is moot because your client initiated arbitration, which is the very subject of this appeal, which is whether or not he signed an agreement that would force him to arbitrate his claims. So if we find that that issue is moot because now arbitration has commenced, then talk about why you think you're entitled to vacatur. Because of the collateral legal consequences extending from the court's order. I'd point this court to its decision in EEOC v. Federal Express Corporation. An appeal is not moot if the court can grant real effectual relief based on real effectual relief. See, I'm not sure. Maybe I'm missing something here. What are the collateral consequences that flow from the district court's order which merely said you signed the agreement and this case is subject to arbitration? What are the collateral consequences that flow from that? I don't find any ruling on the merits of any claim there. The court adjudicated the legal relationship between the parties as to all terms of four separate agreements. And so that order went beyond just compelling arbitration. I don't understand why they couldn't, why you wouldn't still be subject to the counterclaim, if you will, in arbitration, even if the case is moot and the district court's opinion is vacatur or judgment is vacatur. Why couldn't they still pursue it? Because a malicious prosecution counterclaim, Your Honor, requires a favorable termination on the merits. And that would not exist if the order they're relying on was vacatur. Where is there a favorable termination on the merits in the district court's order? The district court's order simply says... It's a sanction order. They're terminating sanctions. I think the concern is that there is an order that grants termination of the litigation as a sanction. And your position is that that judgment is the hook by which the malicious prosecution claims are based. Yes, that is correct, Your Honor. And as well, it's giving rise to arguments of issue preclusion. ByteDance has already tried to dismiss Mr. Yu's entire arbitration demand under a theory of fraud estoppel and bankruptcy estoppel, relying on factual findings in the district court's order. It's also currently trying to dismiss... There aren't what factual findings are in the district court's decision. It's a sanctions order, right? That Mr. Yu, for bankruptcy estoppel, signed the bankruptcy petition, that was a finding the court made? Yeah, but that's precisely what doesn't make any difference now, because you've voluntarily... The only consequence of signing these contracts is that you're subject to arbitration, and you voluntarily submitted yourself to arbitration. And as to the sanctions, all that the sanctions establish is that... Who knows what they establish, because they haven't been imposed yet, but that your client committed misconduct in this litigation about whether or not the case was arbitrable. It doesn't... And you weren't seeking relief in this litigation in federal court. That's what you're seeking in state court. In federal court, all you were seeking was a declaration that the dispute is not arbitrable. So I don't see how any of the underlying claims have been subject to a final determination by any court. And frankly, just while you're thinking about that, perhaps your friends on the other side should be thinking about this as well. I don't see that that is a favorable determination on the merits. It's not on the merits. Two points, Your Honor. First, the Deji action was not whether this case was about arbitration. It was about whether he signed the ESA. That's right. And the Court found that he didn't. And... The Court found that he did. And the... The Court found that he did. That he did. I'm sorry. And the only consequence of that is that the claims that are being written, that the claims covered by those agreements are subject to arbitration. That's the only consequence of not having signed the agreements. And unfortunately, you voluntarily submitted to arbitration before the Court's order even came down. And so I'm still — I don't see where the determination on the merits of any claim is involved here. You weren't pursuing a malicious prosecution claim in Federal Court. That's still sitting in State court. There's nothing here. There's nothing in the Federal Court order that's a determination on the merits of any claim other than whether the case is arbitrable. Your Honor, I think the Court is speculating as to how the arbitrator might rule on ByteDance's malicious prosecution counterclaim against my client based on the order. I'm not speculating about anything. I'm trying to figure out what the effect of the Federal Court order is. And it is — unless you can suggest to me otherwise, it seems to me clear that the effect of the Federal Court order was to force the parties into arbitration. You didn't want arbitration because you said, my client never signed the agreement. The judge made factual findings that he did. They went and wanted arbitration because the agreements called for arbitration. And the judge says, yes, I'm going to order arbitration. That's all the Federal judge did. If you were appealing — if you hadn't submitted to arbitration, we'd then face, as you candidly pointed out, the difficult question of whether we have appellate jurisdiction to review those orders in the first place. But I'm still trying to figure out how either side is either advantaged or disadvantaged — would be advantaged or disadvantaged by anything we said on appeal now, unless we reach beyond the issues posed to the District Court. Your Honor, I would direct this Court to EEOC versus Federal Express Corporation, a decision from the Ninth Circuit saying an appeal is not moot if it can get — if the order can give rise to a collateral legal consequence. Okay. And I hear you. I can't imagine what collateral consequences an order sending you to arbitration imposes on you if you had voluntarily agreed to arbitration before that. Because the District Court also adjudicated that Mr. Yu signed four total documents, in all terms in those documents, including an undertaking agreement, Your Honor, that was presented in the record that did not have a signature on it at all. The Court declared that Mr. Yu signed that. And if you wanted to appeal that finding, then you shouldn't have voluntarily submitted to arbitration. Your client chose to — your client's actions are what moots this case. Nobody said, you know, we could fight about whether that finding is appealable. But that finding by the Court was solely for the purpose of forcing arbitration. I would like to ask a separate question, if I may. In terms of the timing, as I read the record, you submitted the case to arbitration on December 5th of 2024, and the judgment, the District Court's judgment, was not issued until December 12th. So was the case moot, and should the District Court's judgment be vacated for that reason and not the reasons that you have argued as a jurisdictional matter? Yeah. I did not represent Mr. Yu below, but I believe that timeline that you presented, Your Honor, is correct. That certainly would invite the Court to vacate the District Court order on that basis. The question of whether the District Court's order was moot at the time that it issued terminating sanctions, I think the answer is yes. There is case law saying that a District Court may award sanctions under Rule 11, even if it lacks jurisdiction, and, for example, mootness. But that is only for monetary sanctions. In fact, the Supreme Court precedent, Willie v. Coastal Corp., expressly says it's because the Court's sanctions order did not — was not ruling on the merits. But here, it's the exact opposite. The Court ruled on the merits. We don't have sanctions in front of us, correct? You have subject matter jurisdiction. Right. Right. So if the Court imposes sanctions on you, on your client, but you as your client, that's right, this is so confusing, you can appeal that. And you can say it didn't have the power to because it lacked subject matter jurisdiction. That's just not an issue in front of us at the moment, is it? No, that issue is not in front of us, Your Honor. So I think sanctions are probably irrelevant to our analysis of this case. The sanctions were imposed for what I would call discovery abuses. Maybe that's too broad a term. But for things that occurred during the discovery process, right? Correct. I just want to point out again, Your Honors, the Court adjudicated the legal relationship between the parties as to four contracts, declared that Mr. Yu signed all four agreements, also made factual findings that he committed perjury, that he signed a bankruptcy petition. And those findings are giving rise to real collateral consequences in the arbitration. They are currently supporting a malicious prosecution counterclaim that could not exist if the order were vacated. And they're also giving rise to arguments of issue preclusion. Okay, so if we were to put aside Judge Desai's question for a moment, if we were to find that this case is moot and vacate the district court's judgment, is there anything more you would need out of us? No, Your Honor. Okay. I see I've used up the majority of my time. I'll go ahead and let the panel go. We'll put two minutes on the clock for rebuttal since we took up most of your time. Thank you. May it please the Court, Ben Snyder, appearing for Apolli by dance. Mr. Iskander is also here on behalf of Ms. Dow, but I'll be presenting argument for both Apollis. I'm going to read the room and start with mootness. And that's where you're going to finish, I think, too. There's not a lot that I agree with my friend on in this case, but I agree with him that the case is not moot. The district court's decision here granted judgment on all of the claims in the case. So it dismissed the claim for a declaration that Mr. Yu did not sign the ECIAA, and then it granted affirmative relief to my client with respect to the four counterclaims, addressing four different agreements, only one of which was invoked as the basis for initiating arbitration when Mr. Yu attempted to moot the case before the district court entered her sanctions order. And so in an ordinary case, having the relief, just confirming that the person who signed the agreement signed the agreement, might not seem like very much. For my client, having gone through this years-long ordeal of trying to establish that Mr. Yu... Would you be making the same argument if we determined that the case was moot, but we did not vacate the lower court judgment? So I would be pleased to have an order along those lines. And I think your question about the role of the party seeking vacater... Yeah, so I'm having difficulty because both of you are sort of arguing both sides of the coin, depending on whether or not it favors your client's position. And it doesn't really help us a whole lot because, you know, we are not going to issue an advisory opinion, and we don't want to reach issues that we don't need to reach. It seems pretty clear to me that this case is moot. I think it would benefit you to really address the vacater issue because we're having a difficult time seeing how this case isn't moot and having you stand up here and say you agree with the other side. And I'm not even sure they're saying what you're saying. So maybe focus on the vacater issue. So let me be very precise about what I mean to be saying, and I will address the vacater issue too. I mean to be saying that we agree that the case is moot. Now on vacater, I think that the key consideration for whether you would vacate the district court's order is if you were to conclude that it was moot. And again, I strenuously disagree with that. But if you were to conclude that it was moot, the question would be whether it became moot before or after the district court entered the order imposing terminating sanctions. So let me focus on that. If it became moot before the court entered its order, do we even have a choice? So if it became moot before she entered her order, I don't believe that the court has a choice. Now the district court said that he had provided an unsworn assertion that he had initiated arbitration and that therefore she was going to resolve the sanctions motion before her rather than before him. I want to focus on that precise thing. You knew, your side knew, because you were the other party to the arbitration, that whether or not this declaration was sworn or unsworn, arbitration had in fact been initiated. And it is sworn, I will add. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. That seems to me to be sworn. So I apologize, Your Honor. I was relying on the district court's description of that. So I — Well, the district court was in error on that, in my opinion. I take the point. And I don't mean to push that further. I was not aware of that. And I apologize for the mistake. And you never tried to — you never went to the district court. And you were just silent. You knew that arbitration had been initiated, did you not? We knew that arbitration had been initiated. Okay. So why didn't you tell the district court that? We did not believe that the initiation of arbitration mooted this case because there was — That's a separate question. The district court wanted to know whether arbitration had been initiated and issued an order which said, gee, I'm not crediting for whatever reason Mr. Counsel's declaration that it has been initiated. And you knew it had been initiated and never told the district court it had been initiated. If the district court knew that, it might well have said, I'm done. This case is moot. But you never brought that to the attention of the district court, did you? Your Honor, I don't believe we ever — I'm confident we never disputed it. And my — I'm confident you never disputed it. That's not the question I asked. I didn't — the court said, this makes a difference to me. I don't — I'm not sure arbitration has been initiated from whatever has been submitted to me. And you could have said to the district judge, oh, I'm sorry. Arbitration was initiated, and it was done so weeks ago, so you didn't need to enter this order. But you never did that, did you? We did not, Your Honor. To my knowledge, we did not. But we did not think that it mattered. And I don't read the district court's decision as suggesting that it mattered, either. What the district court said was that the motion for terminating sanctions had already — the briefing on that had already been completed. Now, put aside terminating sanctions. That's not what I'm worried about here. What I'm worried about is whether the district court needed to reach the issues raised by you's complaint and your counterclaim. And once — those were the issues raised in — before the district court, putting aside discovery abuse or whatever. And had the district court known that arbitration had been voluntarily entered into before the time the district court entered its order, I can't imagine that the court wouldn't have regarded that as an important fact. And indeed, its opinion said, gee, I might have declared dismute, but I'm not sure I can — I'm not sure that arbitration actually was initiated because, for some reason, I don't credit this declaration. And you know — you knew at that time that arbitration had been initiated, correct? Yes, we knew that.  That's — you can — you can tell — you can tell people why — why that — why your failure to tell the court that didn't matter. But it seems to me that both sides knew, before the court got to the issues that this case posed to it, that because those issues only related to whether arbitration should be initiated — put aside sanctions — there's nothing left for the court to decide. Respectfully, Your Honor, I disagree with the idea that the — the only thing that these related to was whether the arbitration in California under the ECIAA only was going to go forward, because there were — But all of — all of the claims are in arbitration, as I understand it. So there's — there's a dispute in arbitration about where some of the claims against ByteDance Unlimited, the ultimate parent company, could be inserted, for example. Those claims are subject to one of the ancillary agreements dealing with arbitration that requires arbitration in Hong Kong. So the fact that Mr. Yu initiated arbitration — You can make that argument to the arbitrators. Your Honor, we can make that argument to the arbitrators, but — but the — one of the things that we would need to establish in that is that Mr. Yu signed the — signed that other arbitration — Well, so you have to prove it instead of doing it via sanctions. But I don't understand why the case wasn't moot at the time the district court entered the terminating sanctions order, which is what you're relying on. Because we were still attempting to prove that, Your Honor. We — we brought those counterclaims in order to prove that. We attempted to prove it for years in — Except if arbitration was initiated to deal with the question of what agreements, if any, were signed, it — it — I don't understand — I truly don't understand your position. Is there something about the arbitration that doesn't permit you to make the argument that these documents were signed? Your Honor, as Mr. Yu points out in his brief, ordinarily the question of whether an arbitration has been — agreement has been signed is a question for the court rather than for the arbitrator. And so we came to court seeking a declaration that he had signed those agreements. If we lose the declaration — What difference does that make? Because the only reason — it doesn't matter whether — we have cases, I think, saying this. It doesn't matter whether technically a person has to go to arbitration or not. If they begin the arbitration, then before the court gets to it, the court doesn't get to it. So if you can — in other words, if you could prove in the arbitration that had already begun that Mr. Yu had signed one or all of these agreements, then the district court had no business dealing with whether he signed those agreements. Respectfully, Your Honor, I don't think that that's right. The fact that he had initiated an arbitration in California on the underlying state law claims does not require us to submit the question of whether he signed other ancillary agreements that call for arbitration in Hong Kong to that California-based arbitrator. So when the district court ruled here, she still had before her the counterclaims involving arbitration agreements that he had not acknowledged that he had signed, that he was not then proceeding under in arbitration. So at a bare minimum, the district court still had jurisdiction over our counterclaims about those ancillary agreements. And I would also add that — What did the district court rule about those ancillary agreements? The district court ruled that he signed them. And his complaint, as I recall, sought a declaration that he didn't sign them. So his complaint sought a declaration that he had not signed the ECIAA. We removed to federal court — excuse me — and we asserted counterclaims seeking a declaration that he had signed. That he'd signed not only that agreement, but other ones. But three other agreements as well. And what's being arbitrated now in state court? Claims under which agreement? So the state court proceeding is in arbitration under the ECIAA. The claims that are sort of originating in his second state court action, which is — No, I understand. What agreements are at issue in the state court arbitration — in the arbitration? So the district court is — or, excuse me, the arbitrator has authority under the ECIAA. One of the issues that's in dispute in the arbitration is whether certain claims can be brought — can be arbitrated — No, I understand. I'm asking a very different question. So I don't need the — I don't — I don't need the whole history of the case. I'm asking a very specific question. The arbitration that is now taking place, to which both sides have voluntarily submitted, is it an arbitration based on the agreement that they — in which his signature was put at issue by the federal court thing — federal court action? Or is it an arbitration based on the arbitration clauses in all of the agreements? So not — not quite either. Both — in a way, both, in the sense that —  So in a — in a way, both. And then your — your contention — your contention is, wait a minute, arbitrator, you shouldn't be hearing this case here because you should be hearing it in Hong Kong under those agreements, right? Not the entire case. There are some parts of it. Some parts of it. So tell me why the district court's ruling, which doesn't seem — precludes any side from arguing back and forth on that issue? Because — so the district court said — this is a quote from Excerpt from Record 13 — the court declares that you executed the four disputed agreements at issue. So — And one — let me just make sure I understand so that it's helpful to the panel. The first had to do with the declaration that was sought by Mr. Yu in his action that was filed, and the other three were the agreements that were sought to be determined through DEC action in the cross — in the counterclaims file. That's correct. And by — so at most, by submitting to arbitration under the ECIAA, Mr. Yu, I think, acknowledged — although if you read his brief, he doesn't seem to acknowledge — but I think acknowledged that he was bound by the ECIAA. But submitting to that arbitration didn't acknowledge anything with respect to the three ancillary agreements. And so those agreements remained alive before Judge Ilsen, when she entered this order. She had jurisdiction, and she exercised that jurisdiction.  Let's assume that she did. I'm still back to the question, what difference does it make? The parties now having voluntarily agreed to arbitrate their dispute — and I think that voluntary agreement has to mean that we're arbitrating all disputes that we have against each other, does it not? So maybe this would be a good time to address my question of vacatur, because I really would like for you to address that. And I think it sort of bakes in this question, which is it matters — I think your position is that it matters that this not be vacated because there are still rulings with respect to the three ancillary agreements on which you filed your counterclaims. Those are not directly subject to the arbitration proceeding that was commenced by Mr. Yu. And so your preference would be to not — you would be fine with this case being moot if this wasn't vacated. That's correct. Okay, tell me why this doesn't get vacated based on, I think, the questions that my colleague Judge Graber asked on the timing of when this was decided versus the commencement of the  Your Honor, you asked me to be candid. I cannot give you a reason that this case — that that decision below should not be vacated if you decide that it's moot because of the timing. So I would like to be able to give you that answer. I have thought creatively about how to give you that answer. I cannot give you that answer. Well, both sides have been very candid about sort of the issues of appellate jurisdiction and other stuff like that. So I'm still coming back to take — describe for me what the facts were on the ground once the arbitration was initiated in — voluntarily on both sides. What — they initiated the arbitration. What was their claim? So we had counterclaim — we had a counterclaim for malicious prosecution, I believe, in that arbitration. Well, you didn't have any until it was initiated. So I'm just trying to figure — just take me through the chronology of what had happened in the arbitration before the district court entered its order. So the arbitration had just been initiated. I mean, the reason that Mr. — About a week, week or two, 10 days, something like that. Correct. And it's not as though the arbitration suddenly you're like sort of in the thick of things. I mean, we are still at the pleading stage in the arbitration. So Mr. Yu pretty transparently suddenly agreed to arbitration in order to — ECIA, under the ECIA agreement. Under the ECIA only in order to — he saw the writing on the wall. So the other thing that I think makes this case not moot — and may I, Your Honor? Yes. Is that I don't think you can rely on the fact that Mr. Yu voluntarily agreed to arbitration to mean that he's never going to back out of that. So another thing that the district court's order gives us is that it ensures that Mr. Yu cannot decide, all right, now I am no longer sort of sitting under the threat of sanctions from the federal court, and I'm going to go back to what I said in my opening brief, which is in Mr. Yu's opening brief, that I didn't sign this. But counsel, we have case law that specifically says that submission, voluntary proceeding to arbitration conclusively waives any objection to the authority of the arbitrator. So I don't think he can back out as a matter of law from the arbitration and come back to court on any of the same claims. Your Honor, I agree that if he tried, we would have incredibly strong arguments, but that doesn't mean that an injunction ordering him to continue isn't helpful. Courts enter injunctions all the time directing parties that have violated the law in the past not to violate the law again in the future, because enforcing those injunctions is easier than initiating an entirely new claim. So again, for all of those reasons, I do not think that this case is moot. If the court would find it helpful, I would be glad to address the appellate jurisdiction issue as well. Sotomayor, I don't need that at the moment, but I do want to ask another question about mootness. Yeah, I have a question about that, too. Go ahead. But on mootness, so I'm not sure I got an answer to my prior question. I'm just looking for facts at the moment, not legal conclusions. They initiated arbitration under — and that arbitration says, I have claims against your client, and they arise under what agreement? So their claims do not arise under any agreement. Right, right. Okay. And so then you file a counterclaim in the arbitration, right? To be clear, my client filed a counterclaim. Yeah, you — the problem with using you here is a problem. Your side files a counterclaim in the arbitration. Yes. What do you ask for? So, Your Honor, I have not been closely involved in the arbitration, so I'm reluctant to get too far into that. Well, what do you ask for, in general? So we have sought — we have asserted a malicious prosecution claim. A malicious prosecution claim. You're asking the arbitrator to consider a malicious prosecution claim? Yes, that is my understanding. Okay. Is there anything in the court's order, this district court's order, which says whether or not a malicious prosecution claim is arbitrable? So, Your Honor, I understand, and Judge Graber, I heard your question earlier. You were asking about this. I think in a circumstance where a party has attempted to establish that the opposing party signed an agreement and ends up with an order declaring that the opposing party signed an agreement, based on the fact that the opposing party repeatedly lied, committed perjury on multiple occasions throughout that process, I think that that judicial order would be effective in supporting — But that wasn't the question I asked. So that's the argument you've made now pretty repeatedly for 20 minutes. I understand that argument. I'm asking a factual question. You asserted a malicious prosecution counterclaim, correct? Yes. Did you assert — and is there anything in the court's order that determines whether or not that counterclaim is arbitrable? Well, whether it's a great claim or a crappy claim, whether or not you get some support for it from the court's order, I'm asking just a very narrow question. Did the district court ever address whether or not a malicious prosecution claim would be arbitrable? No, Your Honor. That's all. That's the only answer I need. Okay. I have a question about appellate jurisdiction, and this is a chicken-and-egg question. We've been discussing this as if the mootness as the initial jurisdictional question comes first. And my question to you, and also on rebuttal, I appreciate hearing from the other side on this, do we have to address appellate jurisdiction first? In other words, do we have jurisdiction to consider whether the case is moot before we know whether we have jurisdiction over what has been brought to us? So, Your Honor, under cases like Roergass and Sinochem, the Supreme Court cases talking about the basically ordering of jurisdictional issues, I think this court can take any of the jurisdictional issues before it in whatever order it wants. So we have suggested that the—we suggested before this court's question about mootness that the proper order in which to take those questions was to address the question of the district court's subject matter first, and then appellate jurisdiction second. We pointed to a Second Circuit case that does exactly that in our brief. And I think this court could address mootness sort of at any stage in that process, because all of them go to subject matter jurisdiction. MS.  Counsel, I have one last question for you, and I know we've taken you well over your time, but I know that Judge Hurwitz asked a very narrow question, which is whether or not your cross claims or counterclaims in the arbitration, specifically the one with respect to the malicious prosecution, has anything to do with the arbitrability of that claim that came from this district court judgment. I have a sort of broader question, which is in—on—at ER 13, which is the page that you cited to, which is the end of the judgment order from the district court, it says the court declares that you executed the four disputed agreements at issue and then cites them. Do any of the counterclaims that have been brought in the arbitration relate—that that's not the malicious prosecution claim? And I know that you're not counsel who's working on the arbitration, but to the extent that you can answer the question, I'm interested to know if any of the other counterclaims or if there are any other counterclaims that deal with any of those other agreements. MR. So I'm not aware of other counterclaims dealing with it, but let me explain how one of the—the claims that Mr. Yu has brought in the arbitration is relevant to those other agreements. Mr. Yu has argued that he can assert claims under the ECIAA against—and I'm reasonably confident of all of this and will submit a letter correcting it if I say anything that is incorrect here. Mr. Yu has asserted a claim against ByteDance Limited, the parent corporation in that case, asserting that it's bound by the ECIAA. My understanding is that one of the arguments we have made in response is that those—that the arbitrability of the claims there is actually governed by a separate agreement, one of the ancillary agreements that would require it to be arbitrated in Hong Kong. And so this decision is critical to that argument because Mr. Yu, by submitting to arbitration in California under the ECIAA, has not acknowledged that that other arbitration agreement is binding on him. But as a result of page 13 of the excerpts of record, we can say you are bound by that other arbitration agreement, and that would require arbitration of these claims in California—in Hong Kong. So it's—you're seeking to divide the arbitration as it currently exists in California into potentially separate claims that might need to be arbitrated in a different jurisdiction. I'm not sure I'd put it exactly that way. I think my understanding of our position there is we are asserting that he cannot assert certain claims in the arbitration in California. Okay. Because of that agreement. Okay. Thank you, Counselor. Are there any other questions? Yeah, one other question. Let's assume the whole world goes—explodes, and there is no—there are no arbitration orders, and he backs out of arbitration. Isn't the result that the—all these claims just simply get litigated in the California Superior Court? Your question is if we're unable to enforce our arbitration agreement. You're fighting now—obviously, there's a voluntary arbitration that he's initiated about at least some of the claims. You've brought counterclaims in the arbitration saying, well, we have some claims against you, and they ought to be arbitrated, too. And I'm trying to figure out—the arbitrators decide that case one way or another. They decide they're arbitrable. What's your damage? If they decide— They decide that all the claims that you wish to assert against his side are arbitrable. What's the damage to you? There's no damage to— Okay, so why isn't the appropriate thing here to do to let the arbitration proceed to its conclusion? If Mr. Euthens wants to argue that part of the arbitration is improperly decided because it's based on a district court decision that was entered without jurisdiction, the compelling enforcement of the award. But it seems to me the arbitration may clear up all these issues. I'm struggling. Forgive me. I'm struggling. Maybe it's too complicated. Maybe we've gone on for too long. So I'll withdraw the question. All right. Thank you, counsel. You're off the hook. Your Honor, we invite the court to vacate the order. But the simple fact is, unless and until that order is vacated, this appeal is not moot because it is giving rise to real collateral legal consequences. It is supporting a malicious prosecution counterclaim against Mr. Euthens, and he is having to defend against that in arbitration. And unless this court vacates that order, it has the ability to do so. You're not suggesting that they can't pursue their malicious prosecution counterclaim even without this order? I am, Your Honor, because an element of a malicious prosecution counterclaim is a favorable termination on the merits. And if the order is vacated, they would not be able to show a favorable termination on the merits. But I don't understand how the favorable termination on the merits arises out of the district court's order. The merits of the claim have to do with the case being brought in State court, correct? The merits of the State action before the district court was whether Mr. Euthens signed the ECIAA. No, I understand. And the district court — Their claim is that — their claim is that your State action constitutes malicious prosecution. No, it is that — it is that the declaratory judgment action constitutes malicious prosecution. This case. This case. This case. This case. That's why this case is not moot, because this case is giving rise to the malicious prosecution counterclaim. And I apologize if I was not clear on that point earlier. This case is giving rise to the malicious prosecution counterclaim. Oh, and so what they're saying is that your claim that you didn't sign the agreement was malicious. Yes. It lacked probable cause. Mr. Euthens filed it with malice, and it resulted in a favorable termination on the merits, because the district court concluded he did sign the ECIAA. So tell me why the arbitrators have jurisdiction over that claim. We are arguing that the arbitrator does not. ByteDance is arguing that the arbitrator — That led to the question I was asking you. Does. So that's a dispute right now. The arbitrators find, gee, we don't have jurisdiction over that claim. Nobody agreed to arbitrate that claim. Then there is no collateral consequence from the district court's decision, correct? Unless and until they refile in State court that same claim, which they're entitled to do. Then you can argue — yeah. But that's exactly the same as their argument is that you might back out of the arbitration. Yeah. We're not — we're not being asked to predict the future. But it does seem to me that if the arbitrators address the issue of whether or not, even assuming you signed the agreements, they have jurisdiction over a malicious prosecution claim, which is not obvious to me at all, we're in a very different situation than we are now, right? You're right. But as things stand right now, we are having to defend against this claim. And the conclusion that I think your honor is going to is based on the idea, the speculation that the arbitrator will conclude he doesn't have jurisdiction. So what is your defense is that claim is not subject to arbitration, even if we signed the agreements? The argument is that claim is not subject to arbitration because it does not fit within the scope of any of the arbitration clauses. That's right. So even whether or not you signed them really doesn't matter to that argument. You have a separate argument that we never signed the agreements and put that aside for a second. But your argument that this malicious prosecution counterclaim, if you would, is not within the scope — is not an arbitrable claim, doesn't — is independent of whether or not you signed the agreements. Correct, your honor. Okay. And that's something that the — either the arbitrators can take up or is outside their jurisdiction to take up. And you can argue that later when we get to confirmation of an award. So I'm not sure why the district court's ruling in this case has any bearing on whether or not the arbitrators have jurisdiction over a malicious — have jurisdiction over a malicious prosecution. We have no idea. I understand how it — that it might have bearing how it's — how they resolve it if they find they have jurisdiction. We have no idea how the arbitrator is going to rule on the jurisdictional question. What we do know is right now that claim is being inserted against my client. And it's not hypothetical or speculative. It's concrete. We're having to defend against this right now. And therefore, it is not impossible for this court to grant effectual relief by vacating the order. All right. Thank you, counsel. Thank you. The case just argued is submitted. We'll hear.
judges: GRABER, HURWITZ, DESAI